ASJZ/SD/DG 2024R00568

___ LOGGED ___ RECEIVED

1:09 pm, Oct 16 2024

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

SEALED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * **CRIMINAL NO.** JRR 24-0299 |
| **v.** | * |
| | * **(Conspiracy to Defraud the United** |
| **SCOTT REEFE,** | * **States, 18 U.S.C. § 371; Conspiracy to** |
| | * **Commit Wire Fraud, 18 U.S.C. § 1349;** |
| **Defendant** | * **Forfeiture, 18 U.S.C. § 981(a)(1)(C);** |
| | * **18 U.S.C. § 982(a)(2); 21 U.S.C.** |
| | * **§ 853(p); 28 U.S.C. § 2461(c))** |
| | * |
| | * |

*******

### INFORMATION

### COUNT ONE
### (Conspiracy to Defraud the United States)

The United States Attorney for the District of Maryland charges that:

At all times relevant to this Information,

### Background and Introduction

1.     Defendant **SCOTT REEFE** was an information technology ("IT") salesman for Company 1 who focused his efforts on selling IT products to federal government end users. **REEFE** had responsibility for sales to the United States Department of Defense and related entities.

2.     The United States Department of Defense and other federal agencies regularly purchased IT solutions to satisfy specific operational needs. Such solutions, which consisted of both hardware and software products ("IT Products"), often totaled millions of dollars.

3.     In 2018 and 2019, an agency of the Department of Defense (the "DoD Agency") began the process of building such a solution to update two data centers located in Hawaii and

Maryland (the "2019 Data Center Procurement"). The government evaluated its needs, consulted with subject matter experts, and conducted market research. After conducting its analysis, the government identified products to meet the needs of the 2019 Data Center Procurement and set a total budget of $10 million.

4.      To secure the best deal for taxpayers—and to promote free and fair competition—the Department of Defense often ran a bidding process to award contracts. In the case of the 2019 Data Center Procurement, the purpose of the bidding process was to obtain goods at the lowest price possible while meeting specified technical requirements. The Department of Defense expected and required that companies bid competitively and independently for the 2019 Data Center Procurement and by rule obtained two or more bids from eligible bidders prior to purchasing the IT Products.

5.      **REEFE** knew that the Department of Defense often conducted market research by obtaining quotes from eligible resellers and/or distributors of products to encourage resellers to submit the most competitive, lowest priced bid.

6.      **REEFE** knew that the Department of Defense conducted such market research with respect to the 2019 Data Center Procurement, and that when it did so, the Department of Defense sought the lowest priced, technically acceptable bid.

7.      **REEFE** also knew that entities responding to government solicitations were required to submit independent, competitive bids and that the prices contained in their responses to solicitations were to be arrived at independently and without collusion or cooperation with other entities submitting responses to those same solicitations.

## Relevant Individuals and Entities

8.      From at least 2018 until in or about February 2024, **REEFE** was employed at Company 1, an IT company with its principal place of business in San Jose, California. By virtue of this role, **REEFE** had regular access to government facilities and information related to upcoming government procurements. In addition, **REEFE** formed relationships with value-added resellers ("VARs") of IT products and IT product distributors, and assisted VARs with assembling responses to Department of Defense requests for proposals and quotes, including the assembling of bids.

9.      VICTOR M. MARQUEZ was a United States citizen residing in the State and District of Maryland. MARQUEZ was the founder and owner of Company 2 and Company 3.

10.     Company 2 was a government contractor that provided on-site services, including consultant work as relevant to IT procurements such as the 2019 Data Center Procurement. Company 3 submitted bids for government procurements and sold IT Products to the United States government as a prime contractor.

11.     ANTWANN RAWLS was employed by Company 2 as a government contractor who worked onsite at the DoD Agency. For the 2019 Data Center Procurement, RAWLS assisted in developing requirements and conducting market research to assist the DoD Agency in soliciting competitive bids from qualified vendors. RAWLS was also tasked by the DoD Agency with obtaining competitive bids from prospective equipment resellers and evaluating each prospective reseller's bid.

12.     Co-Conspirator 1 was a United States citizen residing in the Commonwealth of Virginia. Co-Conspirator 1 was a government account representative employed by Company 4.

Company 4 also submitted bids for government procurements and sold IT Products to the United States government.

## The Conspiracy

13.     From at least as early as 2018 and continuing through at least as late as May 2019, in the District of Maryland and elsewhere, the Defendant,

## SCOTT REEFE,

did knowingly and willfully combine, conspire, confederate and agree with others, both known and unknown to the United States Attorney, to defraud the United States and agencies thereof, to wit, the Department of Defense, to cheat the United States out of money and to impair, obstruct and defeat by dishonest means the lawful function of conducting market research and procuring goods on a competitive basis, in violation of Title 18, United States Code, Section 371.

## The Purpose of the Conspiracy

14.     It was the purpose of the conspiracy for **REEFE** and his co-conspirators to cheat the United States out of money, to interfere with and obstruct the DoD Agency's 2019 Data Center Procurements, and to fraudulently obtain funds from the Department of Defense with respect to the same.

### *Manner And Means*

15.     The manner and means by which the Defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, but were not limited to, the following:

> a. **REEFE** and his co-conspirators communicated about rigging bids and agreed to rig bids to sell IT Products to the government;
>
> b. **REEFE** and his co-conspirators improperly disclosed non-public bid information in order to facilitate their agreement to rig bids;

c. **REEFE** and his co-conspirators solicited complementary, rigged bids from co-conspirators that were intentionally inflated and not intended to win, despite knowing that the government required two or more independent bids;

d. **REEFE** and his co-conspirators coordinated bids on behalf of value-added resellers ("VARs") and Company 4, including through the submission of intentionally noncompetitive "high price third bid[s]";

e. **REEFE** and his co-conspirators agreed to prepare and submit one or more bids to sell IT Products to the United States government and various of its agencies and departments to give the appearance of competition when, in fact, the price and other information on each bid or quote submitted had been agreed among the co-conspirators, despite knowing that the government required two or more independent bids;

f. **REEFE** and his co-conspirators agreed to prepare and submit, then prepared and submitted, to the United States government bids and quotes to sell IT Products to make it appear to the government that **REEFE** had competed when, in fact, **REEFE** and his co-conspirators had arranged in advance which company would win and submitted quotes and bids at artificially determined, non-competitive prices;

g. MARQUEZ received payments for IT Products at artificially determined, non-independent prices, and used proceeds of his nearly $2.25 million in unlawful gains for personal expenses and expenses unrelated to the 2019 Data Center Procurement;

h. MARQUEZ received payment from the government and made wire transfers to co-conspirators of funds paid by the government in exchange for the IT Products solicited in the 2019 Data Center Procurement.

*Overt Acts*

16.    In furtherance of the conspiracy and to accomplish its objects, the following acts were committed in the District of Maryland, and elsewhere:

a. On or about January 24, 2019, **REEFE** emailed MARQUEZ and Co-Conspirator 1, asking them to find out the third bidder for the 2019 Data Center Procurement and asking Co-Conspirator 1 to "send your responses in today? And maybe throw in a third bid with [an affiliate of Company 4]?"

b. On or about January 24, 2019, Co-Conspirator 1 emailed to confirm his intent to submit an intentionally "high price third bid" in response to the 2019 Data Center Procurement: "Also procurement reached out directly to [Company 4] so I will be submitting a high price third bid, is there any easy way to get all of the skus on your quote into my [Company 4 system] without me just copy pasting?"

c. On or about January 24, 2019, Co-Conspirator 1 coordinated the submission of Company 4's 2019 Data Center Procurement bid with MARQUEZ's submission of Company 3's bid: "Hey Vic [i.e., MARQUEZ], Can you let me know when you [sic] bids are submitted, I want to wait for you to submit yours before I submit just to make sure everything is good to go. I'm getting everything prepped on my side now."

d. On or about January 31, 2019, MARQUEZ signed the "Solicitation/Contract/Order for Commercial Items" for the 2019 Data Center Procurement, Contract Nos.

H98230-19-C-0123 and -0124, with each contract valued at approximately $4.85 million, on behalf of Company 3, falsely certifying that Company 3 complied with the Certificate of Independent Price Determination;

e. On or about May 7, 2019, MARQUEZ received a wire payment of funds from the United States Government as payment for the 2019 Data Center Procurement;

f. On or about May 9, 2019, MARQUEZ received a second wire payment of funds from the United States Government as payment for the 2019 Data Center Procurement; and

g. On or about May 9, 2019, MARQUEZ initiated a wire payment of funds received from the United States Government as payment for the 2019 Data Center Procurement, from a bank account ending in x1978 in the name of Company 3 to a bank account ending in x1343 in the name of Company 3, but controlled by an executive of Company 4.

18 U.S.C. § 371

## COUNT TWO
### (Conspiracy to Commit Wire Fraud)

The United States Attorney further charges that:

1.      The allegations in Paragraphs 1 through 12 and 15-16 are incorporated herein by reference.

### The Scheme to Defraud

2.      From as early as 2018 and continuing through at least as late as May 2019, in the District of Maryland and elsewhere, the Defendant,

### SCOTT REEFE,

and others both known and unknown to the United States Attorney, did knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud ("Scheme to Defraud"), and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, that is, the Defendant knowingly sought to defraud the U.S. Department of Defense by submitting, via interstate wires, materially false, fraudulent, and misleading bids and certifications and to inflate the amount of money and property obtained as a result of those bids and certifications, which caused economic harm, in violation of Title 18, United States Code, Section 1343.

### The Conspiracy to Execute the Scheme to Defraud

3.      From as early as 2018 and continuing through at least as late as May 2019, in the District of Maryland and elsewhere, the Defendant,

### SCOTT REEFE,

did knowingly and willfully conspire, combine, confederate, and agree with others, both known and unknown to the United States Attorney, to commit wire fraud, that is, to knowingly execute and attempt to execute the Scheme to Defraud through the use of interstate wires, in violation of

Title 18, United States Code, Section 1343.

18 U.S.C. § 1349

## FORFEITURE ALLEGATION

The United States, acting through its attorneys, further finds that:

4.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the Defendant that the United States will seek forfeiture as a part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of Defendant's conviction under Counts One and Two of this Information.

### Wire Fraud Forfeiture

5.      Upon conviction of the offenses alleged in Counts One and Two of this Information, the Defendant,

### SCOTT REEFE,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2), any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offenses.

### Substitute Assets

6.      If, as a result of any act or omission of the Defendant, any of the property described above as being subject to forfeiture:

> a.  cannot be located upon the exercise of due diligence;
>
> b.  has been transferred or sold to, or deposited with, a third person;
>
> c.  has been placed beyond the jurisdiction of the Court;
>
> d.  has been substantially diminished in value; or
>
> e.  has been commingled with other property that cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property up to the value of the

forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 21 U.S.C.

§ 982(b)(1) and 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(2)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

JONATHAN KANTER
Assistant Attorney General

EREK L. BARRON
United States Attorney

MICHAEL M. SAWERS
ZACHARY D. TROTTER
ELIZABETH H. FRENCH
Trial Attorneys
Antitrust Division
U.S. Department of Justice
Washington Criminal Section
450 5th Street, NW
Washington, D.C. 20530

Date: 10/16/2024